UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ANGELA L. VILLAREAL,<br><br>    Petitioner,<br><br>v.<br><br>CAROLYN W. COLVIN,[1]<br>Acting Commissioner of Social Security Administration,<br><br>    Respondent. | Case No. 1:12-cv-00009-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

  Currently pending before the Court is Petitioner Angela Villareal's request for review of the Respondent's denial of social security benefits, filed on January 11, 2012. (Dkt. 1) The Court has reviewed the Petition and the Answer, the parties' memoranda, and the administrative record ("AR"), and for the reasons that follow, will affirm the decision of the Commissioner.

### PROCEDURAL HISTORY

  Angela Villareal ("Petitioner") filed an application for Disability Insurance Benefits and Supplemental Security Income on November 20, 2008, alleging disability beginning May 19, 2008, from her psychiatric disorders. This application was denied initially and on reconsideration. A hearing was conducted on March 22, 2011, before Administrative Law Judge

---

[1] Carolyn W. Colvin is substituted for Michael J. Astrue. Colvin became the Acting Commissioner of Social Security Administration on February 14, 2013.

**MEMORANDUM DECISION AND ORDER - 1**

("ALJ") John C. Arkoosh. ALJ Arkoosh heard testimony from Petitioner, medical expert James R. Bruce, Ph.D., and vocational expert Anne Aastum. At the time of the March 2011 hearing, Petitioner was 39 years of age. Petitioner completed high school and her prior work experience includes work as a cashier/checker, farmworker, receptionist, and fish machine feeder.

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantially gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since her alleged onset date of May 19, 2008. At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner's diabetes, polycystic ovaries, anemia, obesity, anxiety and depression severe within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for any listed impairment. If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity ("RFC") and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found the Petitioner retained the RFC to perform light work with certain moderate limitations, and could perform her past relevant work as a cashier/checker.

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience. Because the ALJ found Petitioner not disabled at step four, the ALJ did not proceed to step five.

**MEMORANDUM DECISION AND ORDER - 2**

ALJ Arkoosh issued a decision finding Petitioner not disabled on May 24, 2011. Petitioner timely requested review by the Appeals Council, which denied her request for review on November 9, 2011. Petitioner appealed this final decision to this Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## BACKGROUND

Petitioner suffers primarily from depression and anxiety, specifically post-traumatic stress disorder. On May 19, 2008, Petitioner was involuntarily admitted to a psychiatric hospital after her mother became concerned about bizarre comments made to her by Petitioner.[2] She was released from the hospital after a week-long stay that was uneventful. (AR 247.) She continued with psychiatric treatment after discharge from the hospital with Dr. Jennifer Preucil, who reported on October 23, 2008, that Petitioner was doing "much better," and thinking of going back to work. (AR 259-60.) Her exercise at that time consisted of "deep cleaning" her home two times per week. This was an improvement since Petitioner's visit on July 18, 2008, when Dr. Preucil reported that Petitioner had "about a 20% improvement" and was still struggling with activities of daily living, such as laundry and grocery shopping. (AR 275.) On September 15, 2008, Dr. Susan Carpenter, a psychiatrist, evaluated Petitioner. At the examination, Dr. Carpenter noted Petitioner was "disheveled," that she appeared anxious, with fair to poor insight and judgment. (AR 379-80.) Dr. Carpenter opined that Petitioner had a GAF score of 60 at that time.

On January 8, 2009, a Psychiatric Review was completed by Dr. Michael Dennis, an agency physician, who was of the opinion that Petitioner suffered from, at most, moderate

---

[2] Petitioner did not challenge the ALJ's findings that her physical impairments do not restrict her ability to work, so the Court does not discuss them here.

**MEMORANDUM DECISION AND ORDER - 3**

limitations. In his view, Dr. Carpenter's and Dr. Preucil's notes, discussed above, indicated steady progression of improvement from the brief psychotic episode in May of 2008. But Dr. Dennis agreed Petitioner did suffer from continued depression and anxiety, which affected Petitioner's concentration and socialization. (AR 382-83.)

By April of 2009, Dr. Carpenter noted that Petitioner reported feeling "much better emotionally," and that she was excited to start vocational rehabilitation. (AR 410.) But on March 28, 2011, Dr. Carpenter wrote a letter indicating that she "cannot say that [Petitioner] has ever been completely stable in the last two years," and would be unable to hold a job. (AR 772—73.) On May 22, 2009, another agency physician, Dr. Sanford, completed a psychiatric review, and was of the opinion that while Petitioner suffered from anxiety and depression, her symptoms did not meet the listing criteria of either Listing 12.04 (Affective Disorders) or Listing 12.06 (Anxiety-Related Disorders). (AR 427-443.) Again, consistent with Dr. Dennis, Dr. Sanford determined that Petitioner suffered from, at most, moderate limitations which would preclude Petitioner from work involving complex tasks involving sustained concentration and persistence, or involving complex understanding and memory.

On March 1, 2010, Amy Prestin, LCPC, completed a comprehensive diagnostic assessment. (AR 521-24.) Counselor Prestin concluded Petitioner continued to suffer from symptoms of anxiety and depression, and would benefit from continuing psychiatric services. On March 22, 2010, Dr. Preucil noted that Petitioner was now seeing a counselor, was "doing pretty well," and was "stable with meds." (AR 645—46.) Despite these assessments, on February 14, 2011, Dr. Carpenter completed a "check the box" Psychiatric Review form and concluded Petitioner "meets criteria" for Listing 12.02 (Organic Mental Disorders) and 12.04 (Affective Disorders). (AR 670—72.) Without further explanation, Dr. Alexander and Dr.

**MEMORANDUM DECISION AND ORDER - 4**

Prestin indicated they agreed with Dr. Carpenter's assessment. (AR 766.)

Petitioner's mother and eighteen-year-old son completed statements as well. Petitioner's son noted Petitioner did not bathe or clean, did not cook, slept most of the day, and did not leave the house. (AR 682.) Petitioner's mother indicated Petitioner left her house only for dinner or to attend her doctors' appointments. (AR 683.) Hermie McFarland, a behavioral consultant at Alliance Family Services who had provided services to Petitioner, indicated that Petitioner lacked any interest in doing daily chores, and relied upon her mother to meet personal responsibilities. (AR 684.)

At the hearing, Petitioner testified that she does little else besides Bible study every day for five or six hours each day. (AR 68.) Otherwise, Petitioner's mother shops, cooks, and helps with finances, and her son maintains her house. (AR 68.) Dr. James Bruce testified that Petitioner's testimony would indicate more than a moderate level of impairment, but that the treatment notes and narratives from treating physicians would not support more than a moderate level of impairment. (AR 72.) Dr. Bruce testified also that, if Dr. Carpenter's listing level opinion were credited, "we would see a great deal more pathology in the narratives," which was not present. (AR 74.)

The ALJ adopted Dr. Bruce's opinion that Petitioner suffered from mild to moderate limitations in activities of daily living and in maintaining social functioning, concentration, persistence or pace. (AR 19.) The ALJ explained that Dr. Bruce's opinions were supported by the record, because the extreme limitations endorsed by Drs. Carpenter and Alexander, and by Ms. Prestin were not supported by the narratives in their own medical records. Those records consistently indicated that Petitioner was improving and was stable on her medication after her hospitalization in May of 2008. The ALJ therefore gave the statements by Petitioner's son and

MEMORANDUM DECISION AND ORDER - 5

mother little weight, because they were inconsistent with the other evidence in the record, which did not support the extreme functional limitations suggested. (AR 19.) The ALJ concluded that, even considering Petitioner's moderate limitations as detailed in his RFC analysis, Petitioner could perform her past relevant work as a cashier. (AR 15, 19—20.)

## DISCUSSION

**1.     Standard of Review**

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v.*

**MEMORANDUM DECISION AND ORDER - 6**

*Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

### 2.     Medical Source Testimony

The Court first turns to Petitioner's arguments that the ALJ erred in discounting the treating source opinions of Drs. Carpenter and Alexander and instead accepting the nonexamining physicians' opinions, including that of the medical expert, Dr. Bruce.

Case law from the United States Court of Appeals for the Ninth Circuit distinguishes among the opinions of three types of physicians: (1) those who treat the claimant (treating

**MEMORANDUM DECISION AND ORDER - 7**

physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight is accorded to the opinion of a treating source than to nontreating physicians. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). And, an examining physician's opinion is entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984).

Where medical reports are inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Morgan v. Comm'r of Social Security Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). An ALJ may reject the testimony of a treating physician, in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial evidence in the record. *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995.) Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when the opinions are supported by other evidence in the record and are consistent with it. *Morgan*, 169 F.3d at 600. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Morgan*, 169 F.3d at 600–601. The ALJ need not accept the opinion of any physician if the opinion is brief, conclusory, and inadequately supported by clinical findings. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Additionally, an ALJ is not bound to a physician's opinion of a petitioner's physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the physician's opinion, the ALJ may reject

**MEMORANDUM DECISION AND ORDER - 8**

that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999). Further, an ALJ may reject a physician's opinion if it is based "to a large extent" on a claimant's self-reports that have been property discounted as not credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

     Drs. Carpenter and Alexander are considered treating physicians, and the ALJ properly rejected their opinions and instead accepted the opinion of the testifying expert, Dr. Bruce, as well as the opinions of the nonexamining physicians who reviewed the medical records. The ALJ gave specific and legitimate reasons for doing so, which reasons are supported by substantial evidence in the record. The ALJ gave several germane reasons for discounting the opinions of Drs. Carpenter and Alexander in favor of the conflicting testimony of Dr. Bruce and the reviewing physicians.

     First, Dr. Carpenter's opinion concerning the impact of Petitioner's mental impairments on her ability to work were contradicted by Dr. Carpenter's clinical observations, and her own notes that Petitioner exhibited significant improvement after her May 2008 hospitalization. The ALJ noted also that Petitioner's providers rated her GAF at 54, suggestive of the moderate limitations that the ALJ adopted as part of his RFC determination. Petitioner takes issue with the lack of a "detailed and thorough summary" of the facts and clinical evidence. But the ALJ set forth all of the medical evidence upon which he relied in his opinion, beginning at page seven, in comprehensive fashion. (AR 17—18.)

**MEMORANDUM DECISION AND ORDER - 9**

The ALJ rejected Dr. Alexander's opinion of "extreme" limitations because she simply endorsed Dr. Carpenter's assessment without further explanation or elaboration. Because the ALJ already had rejected Dr. Carpenter's assessment, no further explanation by the ALJ was necessary.

Petitioner next argues that the ALJ improperly rejected Ms. Prestin's opinion that Petitioner's symptoms constituted listing level impairments. Ms. Prestin is considered an "other source," and is not entitled to the same deference as medical sources. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). To discount testimony from an "other source," the ALJ must give "reasons germane to each witness for doing so." *Molina*, 674 F.3d at 1111. The ALJ gave several germane reasons for discounting Ms. Prestin's opinions in favor of the conflicting testimony of Dr. Bruce, and these reasons were supported by substantial evidence in the record.

First, Ms. Prestin's opinion that Petitioner's impairments met listing level, and that Petitioner had marked restrictions in certain activities of daily living and extreme difficulty in maintaining social function, contradicted Ms. Prestin's own assessment that Petitioner had a GAF of 54, suggestive of only moderate limitations rather than the extreme limitations she later endorsed. Second, the ALJ noted that Ms. Prestin, like Dr. Alexander, simply signed Dr. Carpenter's psychological assessment---a simple "check the box" form---without further elaboration or explanation. Therefore, the ALJ did not err in discounting Ms. Prestin's opinion where it conflicted with Dr. Bruce's opinion provided at the hearing.

3.   **Lay Witness Testimony**

Petitioner challenges the ALJ's treatment of the testimony given by Petitiner's son and mother, as well as by Ms. McFarland, all of whom are lay witnesses. (AR 31.) Petitioner argues that the ALJ rejected their testimony without providing sufficient justification. An ALJ must

consider evidence from sources other than the claimant, including family members and friends, to show the severity of a claimant's impairment. 20 C.F.R. § 404.1513(d)(4); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 ((9th Cir. Cir. 2006). Lay testimony regarding a claimant's symptoms constitutes competent evidence that an ALJ must take into account, unless he expressly determines to disregard such testimony and gives reasons germane to each witness for doing so. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (internal citations omitted)); *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294 (9th Cir. 1999). Such reasons include conflicting medical evidence, prior inconsistent statements, or a claimant's daily activities. *Lewis v. Apfel*, 236 F.3d 503, 511–12 (9th Cir. 2001).

Here, the ALJ properly rejected the statements of the lay witnesses. All of the lay witnesses suggested extreme limitations, including Petitioner's son, who described his mother as "getting worse" after her hospitalization in May 2008. But, the ALJ noted that the medical evidence, which included Petitioner's self-reports that she was doing much better on medication, as well as clinical observations, indicated steady improvement following Petitioner's hospital stay. The ALJ cited several places in the record where evidence contradicted the lay witnesses' description of extreme limitations. (AR 20.) Further, the ALJ noted the conflicting medical reports, and the absence of extreme mental health limitations as supported by the record as a whole. The ALJ therefore did not err in rejecting the lay witness testimony.

4.     **Petitioner's Credibility**

Finally, although not stated in her statement of reasons, Petitioner disputes the ALJ's credibility determination. Petitioner argues that the ALJ failed to consider Petitioner's

**MEMORANDUM DECISION AND ORDER - 11**

testimony, which Dr. Bruce indicated would render Petitioner as meeting listing criteria. Petitioner described engaging in no activities other than five to six hours of Bible study daily, microwaving her meals, and walking to her mother's house for dinner. But, the ALJ considered Dr. Bruce's opinion, based upon his review of Petitioner's medical records, that Petitioner suffered at most from moderate limitations, which would not preclude her from working.

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Reddick*, 157 F.3d at 722. If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (holding that an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony). Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony. *Burch*, 400 F.3d at 680. General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Reddick*, 157 F.3d at 722.

The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999). If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). When the evidence can support either outcome, the Court may not

**MEMORANDUM DECISION AND ORDER - 12**

substitute its judgment for that of the ALJ.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains.  *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).  Also, the ALJ may consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of medications; and treatment measures taken by the claimant to alleviate those symptoms.  *See* Soc. Sec. Ruling 96-7p.

The Court finds, as stated above, that the ALJ did not err in finding Petitioner's self-report not credible to the extent Petitioner described in her testimony. Although Petitioner reported engaging in very little activity, the ALJ articulated that the medical records belie Petitioner's assertion that her mental impairments precluded all work. The ALJ noted that the medical evidence of record after Petitioner's hospitalization indicated a steady progression of improvement, and symptoms controlled with medication. Further, the ALJ discussed that Petitioner's symptoms resulted in moderate limitations, and considered those limitations in his RFC assessment. For example, the ALJ determined Petitioner could not perform the full range of light work given her psychological impairments. (AR 15, 21.) Despite not being able to perform the full range of light work, the hypothetical posed to the vocational expert resulted in a finding that Petitioner could perform her past relevant work as a cashier. The ALJ considered Petitioner's testimony and incorporated it into his RFC analysis. He gave clear and convincing reasons for rejecting Petitioner's claim that her psychological impairments resulted in the

**MEMORANDUM DECISION AND ORDER - 13**

extreme limitations she suggested at the hearing.

Therefore, the Court finds that the ALJ did consider all relevant evidence in the record when he evaluated Petitioner's RFC, and determined at step four that Petitioner could return to her past relevant work.

## CONCLUSION

The ALJ did not err in weighing the evidence as he did, or in finding that Petitioner's testimony regarding the severity of her psychological impairments was not fully credible. The ALJ credited Petitioner's testimony to the extent it was supported by the medical evidence in the record. The ALJ did not err with respect to his consideration of the lay testimony, given the lay testimony described the same extreme limitations as Petitioner did during her own testimony; the ALJ's reasons for rejecting the extreme nature of the limitations apply with equal force to the lay testimony. Finally, the ALJ's reasons for rejecting the opinions of Drs. Carpenter and Dr. Alexander regarding Petitioner's extreme limitations, and Ms. Prestin's opinion, were supported by substantial evidence in the record. Therefore, the Court must affirm the ALJ's decision.

**ORDER**

Based upon the foregoing, the Court being otherwise fully advised in the premises, **it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED** and that the petition for review is **DISMISSED**.

Dated: **March 25, 2013**

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 15**